******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## KIMBERLY ELDRIDGE *v.* HOSPITAL OF CENTRAL CONNECTICUT
### (AC 46868)

Moll, Suarez and Prescott, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment for the defendant, rendered following its grant of the defendant's motion for summary judgment on the plaintiff's complaint alleging, inter alia, employment discrimination based on disability. The plaintiff claimed, inter alia, that the court improperly concluded that a genuine issue of material fact did not exist with respect to whether the defendant's reasons for its termination of her employment were pretextual in nature. *Held*:

The trial court properly granted the defendant's motion for summary judgment on the plaintiff's claim of disability discrimination, as it properly applied the burden shifting framework of *McDonnell Douglas Corp.* v. *Green* (411 U.S. 792) to evaluate the discrimination claim, and, after the defendant presented unrefuted evidence that its termination of the plaintiff's employment was not based on her disability, the burden shifted to the plaintiff, and the plaintiff failed to present any evidence that the defendant's reasons for terminating her employment were pretextual.

The trial court properly granted the defendant's motion for summary judgment on the plaintiff's claim that the defendant failed to provide her with a reasonable accommodation for her disability, as the plaintiff failed to present evidence to raise a genuine issue of material fact that she initiated a request for a reasonable accommodation or that the defendant had a position available to which she could have been reassigned prior to the termination of her employment.

Argued September 9, 2024—officially released February 11, 2025

*Procedural History*

Action to recover damages for, inter alia, alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Knox, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*James V. Sabatini*, for the appellant (plaintiff).

*David R. Jimenez*, with whom were *Adam J. Lyke*, and, on the brief, *Jessica L. Draper*, for the appellee (defendant).

*Opinion*

SUAREZ, J. The plaintiff, Kimberly Eldridge, appeals from the summary judgment rendered by the trial court in favor of the defendant, the Hospital of Central Connecticut, with respect to her claims under the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq., for disability discrimination, failure to accommodate, and retaliation.[1] The plaintiff raises two claims. First, with respect to her allegation of disability discrimination, the plaintiff claims that the court improperly concluded that a genuine issue of material fact did not exist with respect to whether the defendant's reasons for the termination of her employment were pretextual in nature. Second, in connection with her claim that the defendant failed to provide her with a reasonable accommodation for her disability, the plaintiff claims that the court improperly concluded that a genuine issue of material fact did not exist with respect to whether she made a good faith request for an accommodation. We affirm the judgment of the court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following undisputed facts and procedural history. The defendant hired the plaintiff as a licensed registered nurse on or about March 6, 2017. The plaintiff suffers from several conditions including alcoholism and bipolar disorder. In May, 2018, the plaintiff began a medical leave of absence pursuant to both the federal Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq. (2018), and the Connecticut Family and Medical Leave Act (CFMLA), General Statutes § 31-51kk

---

[1] The plaintiff has not challenged the court's summary judgment with respect to her retaliation claim set forth in the third count of her complaint.

et seq., to undergo treatment for alcoholism and bipolar disorder, as well as depression. By the time the plaintiff went on leave, the defendant was aware of her medical conditions. The plaintiff was entitled to up to twelve weeks of leave under the FMLA and up to sixteen weeks of leave under the CFMLA.

During the plaintiff's leave of absence, the Department of Public Health (department) began investigating the plaintiff's history of alcohol abuse. At the conclusion of the investigation, the department expressed concerns as to the impact the plaintiff's alcoholism had on her ability to work as a nurse and recommended disciplinary action. In response to the department's findings and recommendation, the Board of Examiners for Nursing suspended the plaintiff's Connecticut nursing license as of August 22, 2018. The plaintiff's license remained suspended until she voluntarily surrendered it on May 28, 2019.

On October 17, 2018, Prudential Insurance Company of America, the third-party administrator through which the defendant managed its employees' leaves of absences, informed the plaintiff that, although she had exhausted her FMLA leave as of August 6, 2018, and her CFMLA leave as of September 3, 2018, her leave benefits would be further extended through November 11, 2018. On November 12, 2018, the defendant terminated the plaintiff's employment. As of the date of termination, the plaintiff's nursing license remained suspended, she had not provided the defendant with a return to work date, and she had not informed the defendant as to whether she would ever be able to return to work.

On February 19, 2021, the plaintiff commenced this action against the defendant.[2] In her complaint, the

_____

[2] A person alleging discriminatory work practices in violation of CFEPA must exhaust his or her administrative remedies by filing a complaint with the Commission on Human Rights and Opportunities (CHRO) in accordance with General Statutes § 46a-82. Only after obtaining a release of jurisdiction

plaintiff alleged, inter alia, that the defendant discriminated against her on the basis of disability in violation of General Statutes § 46a-60 (b) (1) when it unlawfully terminated her employment due to her disability and failed to engage in the required good faith interactive process to provide her with a reasonable accommodation. On February 28, 2023, the defendant filed a motion for summary judgment accompanied by a memorandum of law. Attached to its memorandum were affidavits, excerpts from the plaintiff's deposition, and other documentary evidence. On May 30, 2023, the plaintiff filed a memorandum in opposition to the defendant's motion which included additional documentary evidence. The court heard oral argument on June 20, 2023.

On August 11, 2023, the court issued a memorandum of decision in which it concluded that there were no genuine issues of material fact with respect to the plaintiff's claims and that the defendant was entitled to judgment as a matter of law. With respect to the disability discrimination claim set forth in count one of the plaintiff's complaint, the court determined that, although the plaintiff had established a prima facie case of disability discrimination under the *McDonnell Douglas*[3] framework, the defendant had articulated legitimate, nondiscriminatory reasons for the termination. The court determined that the plaintiff subsequently failed to present evidence that created a genuine issue of material

from the CHRO may that person pursue a civil action in the Superior Court. See General Statutes § 46a-100. Any such action must be brought within ninety days of receipt of the CHRO release. General Statutes § 46a-101 (e). Moreover, any such action must be brought within two years from the date of the filing of the CHRO complaint. General Statutes § 46a-102. In the present case, the plaintiff obtained a release of jurisdiction from the CHRO on November 30, 2020.

[3] Adapted from *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny, the *McDonnell Douglas* framework is the test generally employed in assessing discrimination claims under Connecticut law. See *Cooling* v. *Torrington*, 221 Conn. App. 567, 583 n.11, 302 A.3d 319 (2023).

fact that the defendant's proffered reasons for the termination were pretextual. Furthermore, the court determined that the defendant was entitled to judgment as a matter of law on the plaintiff's claim for failure to accommodate, as the plaintiff failed to identify any request for accommodation made prior to termination. This appeal followed.

We begin by setting forth the applicable standard of review. "The standards governing our review of a court's decision to grant a defendant's motion for summary judgment are well settled. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and [only on such a showing] the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Cooling* v. *Torrington*, 221 Conn. App. 567, 582–83, 302 A.3d 319 (2023).

I

The plaintiff first claims that the court erred in granting the defendant's motion for summary judgment with respect to her disability discrimination claim set forth in count one of her complaint. Specifically, the plaintiff argues that the court erred in applying the *McDonnell Douglas* framework. Alternatively, she argues that, even if the *McDonnell Douglas* framework applied, the court erred in first determining that the defendant satisfied its burden to identify legitimate, nondiscriminatory reasons for termination and then determining that she failed to raise a genuine issue of material fact as to whether those reasons were pretextual. The defendant counters that the court correctly applied the *McDonnell Douglas* framework and concluded that the defendant was entitled to judgment as a matter of law on count one. We agree with the defendant.

We begin by setting forth the following relevant legal principles. Under CFEPA, "employers may not discriminate against certain protected classes of individuals . . . ." *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 775, 105 A.3d 103 (2014). Section 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice . . . (1) [f]or an employer . . . to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . present or past history of mental disability . . . [or] physical disability. . . ."

In order to establish a prima facie case of employment discrimination "based on adverse employment action under the burden shifting analysis enumerated by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and adopted by [our Supreme Court] in *Ford* v. *Blue Cross & Blue Shield of Connecticut*,

*Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990) . . . the complainant must prove that: (1) [s]he [was] in the protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 705–706, 900 A.2d 498 (2006). "The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Internal quotation marks omitted.) Id., 705.

"To prove pretext, the plaintiff may show by a preponderance of the evidence that [the defendant's] reason is not worthy of belief or that more likely than not it is not a true reason or the only true reason for [the defendant's] decision to [terminate the plaintiff's employment] . . . . Of course, to defeat summary judgment . . . the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." (Citation omitted; internal quotation marks omitted.) *Taing* v. *CAMRAC, LLC*, 189 Conn. App. 23, 28–29, 206 A.3d 194 (2019). "A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable [fact finder] could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (Internal quotation marks omitted.) *Bombero* v. *Warner-Lambert*

*Co.*, 142 F. Supp. 2d 196, 203 n.7 (D. Conn. 2000), aff'd, 9 Fed. Appx. 38 (2d Cir. 2001).

As a threshold issue, we address the plaintiff's claim that, by applying *McDonnell Douglas*, the court applied an improper legal standard in evaluating her disability discrimination claim. She argues that, "[w]hen the reason given by the employer for the adverse employment action is unrelated to the employee's disability, the *McDonnell Douglas* approach can be used to weed out nonviable claims of discrimination based on circumstantial evidence." She contends, however, that, "[w]hen the parties agree that the employer complains of conduct that is the direct result of the employee's disability . . . there is no need to evaluate whether the employer's adverse employment action made in response to that conduct is pretextual." She further asserts that "[a] plaintiff cannot come forward with evidence of pretext where the very reason for the adverse employment action is the disability related extended medical leave of absence." It is fundamentally at odds with CFEPA, she argues, to require a plaintiff claiming disability discrimination to establish pretext when the employer has terminated the individual's employment because of her disability.

The plaintiff's argument assumes that the defendant's adverse employment action is in direct response to the plaintiff's disability. The defendant, however, presented unrefuted evidence that its termination of the plaintiff's employment was not based on her disability. The defendant articulated two nondiscriminatory bases for its termination of the plaintiff's employment: her failure to return to work and her inability to work as a registered nurse due to the loss of her Connecticut nursing license. Under these circumstances, the *McDonnell Douglas* framework of analysis is an appropriate method to employ. Consequently, the burden shifted to the plaintiff to present evidence demonstrating, either

directly or by inference, the existence of a genuine issue of material fact with respect to whether these bases were pretextual.

We next consider whether the court properly applied the *McDonnell Douglas* pretext model of analysis. In the present case, the court determined, and we agree, that the plaintiff satisfied her burden to make out a prima facie case and that the defendant satisfied its burden to identify legitimate, nondiscriminatory reasons for termination. After the defendant set forth its two legitimate and nondiscriminatory justifications for termination, under the *McDonnell Douglas* framework, the burden shifted back to the plaintiff to present sufficient evidence to create a genuine issue of material fact as to whether those stated reasons were pretexts for discrimination. She, however, has failed to offer any evidence that the defendant's legitimate reasons are pretextual. Instead, she maintains that this is not a pretext case. For the reasons stated earlier in this opinion, we disagree. After a thorough review of the record, we agree with the court that the plaintiff did not satisfy her burden under the *McDonnell Douglas* framework because she failed to offer any evidence of pretext. Accordingly, we conclude that the court properly applied the *McDonnell Douglas* framework and rendered summary judgment in favor of the defendant on the plaintiff's claim of disability discrimination.

## II

The plaintiff next claims that the court erred in granting summary judgment in favor of the defendant on her failure to accommodate claim because it improperly concluded that a genuine issue of material fact did not exist with respect to whether she made a good faith request for an accommodation. We disagree.

We turn to relevant state law regarding employment discrimination premised on a failure to reasonably

accommodate a disability. "Section 46a-60 (b) (1) requires employers to reasonably accommodate an employee's disability. . . . In order to survive a motion for summary judgment on a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable jury to find that (1) [she] is disabled within the meaning of the [statute], (2) [she] was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it. . . . If the employee has made such a prima facie showing, the burden shifts to the employer to show that such an accommodation would impose an undue hardship on its business." (Citation omitted; internal quotation marks omitted.) *Bartolotta* v. *Human Resources Agency of New Britain, Inc.*, 224 Conn. App. 248, 272–73, 312 A.3d 59, cert. denied, 349 Conn. 908, 313 A.3d 513 (2024). At issue in the present case is the court's conclusion that the plaintiff failed to satisfy her burden, under both the second and third prongs, by failing to produce evidence that she initiated the interactive process with a request for accommodations while still employed by the defendant.

"Our Supreme Court has interpreted CFEPA, consistent with analogous federal law; see *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 403–404, 415–16, 944 A.2d 925 (2008); to require an employer and an employee to engage in an informal, interactive process . . . [to] identify the precise limitations resulting from [an employee's] disability and potential reasonable accommodations that could overcome those limitations. . . . The need for bilateral discussion arises because each party holds information the other does not have or cannot easily obtain. . . . The employee bears the burden of initiating the interactive process

and must come forward with some suggestion of accommodation, and the employer must make a good faith effort to participate in that discussion. . . . A plaintiff who fails to initiate or to participate in the interactive process in good faith cannot prevail on an employment discrimination claim under CFEPA. . . . Once the employee has initiated the informal interactive process, the employer has a duty of good faith compliance." (Internal quotation marks omitted.) *Cooling* v. *Torrington*, supra, 221 Conn. App. 584.

"The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment . . . . To satisfy this burden, [the] [p]laintiff must establish both that [her] requested accommodation would enable [her] to perform the essential functions of [her] job and that it would allow [her] to do so at or around the time at which it is sought." (Citation omitted; internal quotation marks omitted.) *Thomson* v. *Dept. of Social Services*, 176 Conn. App. 122, 129, 169 A.3d 256, cert. denied, 327 Conn. 962, 172 A.3d 800 (2017).

In the present case, the plaintiff argues that there are two types of accommodations at issue: (1) a medical leave of absence, and (2) job reassignment. A medical leave of absence is a recognized accommodation; however, "[t]he duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating [her] . . . based on [an] inability to work." (Internal quotation marks omitted.) Id., 130. Reassignment to an alternative position is also a recognized accommodation; however, a "plaintiff requesting reassignment as [an] accommodation [is] required to demonstrate the existence, at or around the

time when accommodation was sought, of an existing vacant position to which she could have been reassigned." (Internal quotation marks omitted.) Id., 129.

In addition to arguing that the record contains no evidence that the plaintiff initiated the good faith interactive process, as is required for the defendant to be obligated to engage in that process, the defendant asserts that the plaintiff's arguments premised on those alleged accommodations fail because "(1) it is not required to hold open the plaintiff's position for an indefinite period of time and (2) the plaintiff has produced no evidence of a vacant role that the defendant could have placed her in before the end of her employment." The defendant argues that the record is simply devoid of any evidence that the plaintiff initiated the good faith interactive process with a request for a reasonable accommodation prior to termination. As the court noted in its memorandum of decision, "[even] the plaintiff's [own] opposition memorandum does not point the court to evidence that she actually requested an accommodation while still employed with the defendant."

With respect to the leave of absence claim, the plaintiff admits that, as of the date of termination, she had not provided the defendant with a return to work date or even notified the defendant that she would ever be able to return to work. With respect to the claim of job reassignment, the plaintiff maintains that she may have been qualified for a position in the dietary field or as a registered medical assistant. The plaintiff, however, did not submit any evidence that the defendant had a vacant position in either of these areas during the period between the commencement of her leave and the termination of her employment. The plaintiff admits that she never applied for an alternative position with the defendant until after termination. Therefore, the plaintiff has not produced any evidence to raise a genuine

issue of material fact that there was a position to which she could have been reassigned as an accommodation prior to termination.

Accordingly, the trial court properly rendered summary judgment in favor of the defendant on the plaintiff's claim for failure to accommodate.

The judgment is affirmed.

In this opinion the other judges concurred.